Anthony L. Evans, T97368
Souza-Baranowski Correctional Center
P.O. Box 8000
Shirley, MA. 01464
"Pro Se" Litigant

DEC 17 2021
Clerk, U.S. Courts
District of Montana
Helena Division

United States District Court
District of Montana
Helena Division

| | |
|---|---|
| Anthony L. Evans, Plaintiff | |
| vs. | 42 U.S.C. Sec. 1983 Civil Complaint |
| Brian M. Gootkin, & Jim Salmonsen Defendants | |

I. Introduction:

1. This is a civil rights action filed by Anthony L. Evans, a state prisoner, seeking damages and injunctive relief under 42 U.S.C. Sec. 1983 alleging retaliation, under color of state law, in violation

of the First Amendment to the Constitution of the United States.

## II. Jurisdiction:

2. The Court has jurisdiction over the plaintiff's claims of violation of his federal constitutional rights under 42 U.S.C. Section(s): 1331(1) and :343

## III. Plaintiff:

3. Anthony L. Evans, (hereinafter, Mr. Evans) is the Plaintiff in this action, who at all times mentioned herein, was incarcerated at the Montana State Prison (MSP)

4. On February 19, 2019; the defendants transferred Mr. Evans out-of-state to Massachusetts via the Interstate Corrections Compact (I.C.C.)

5. He is currently incarcerated at Souza-Baranowski Correctional Center, P.O. Box 8000 Shirley, MA. 01464

## IV. Defendants:

6. Brian M. Gootkin, (hereinafter, Mr.

(Gootkin) is and was, at all times mentioned herein, the Director of the Montana Department of Corrections (MDOC)

7. As such, he is legally responsible for the overall operations of MDOC and MSP, as well as the transfer of prisoners, including Mr. Evans, from MSP via the Interstate Corrections Compact.

8. Mr. Gootkin is and was, at all times mentioned herein, acting under color of state law while violating Mr. Evans' federal constitutional rights, and is being sued in both his individual and official capacities.

9. Jim Salmonsen (hereinafter, Mr. Salmonsen) is and was, at all times mentioned herein, the Warden of the Montana State Prison (MSP).

10. As such, he is legally responsible for the overall operations of MSP, as well as the transfer of prisoners, including Mr. Evans, from MSP via the Interstate Corrections Compact (I.C.C)

11. Mr. Salmonsen was acting under color of state law while violating Mr.

Evans' federal constitutional rights, and is being sued in both his individual and official capacities.

12. Service of process can be made upon both defendants at Montana Department of Corrections - 5 South Last Chance Gulch Helena, MT- 59620

## II. Supporting Facts:

13. Mr. Evans is well-known as a "Jailhouse lawyer" within the Montana Dept. of Corrections (MDOC) and Montana State Prison (MSP), and has a long history of filing both grievances and lawsuits against MDOC and MSP officials. Both Mr. Goothin and Mr. Salmonsen are fully aware of these facts.

14. Mr. Evans was returned to MSP on April 25, 2018 after having his probation revoked. Upon his return, Mr. Evans continued his activities of filing grievances and lawsuits against MDOC and MSP officials.

15. On February 19, 2019 Mr. Goothin and Mr. Salmonsen transferred Mr. Evans out-of-state to Massachusetts via the Interstate Corrections Compact (I.C.C.). The only


explanation given for this transfer, was that it was an "administrative" transfer.

16. Mr. Evans took this to mean that his being transferred was sanctioned by Mr. Gootkin and Mr. Salmonsen, who are the only administrative prison officials with full authority to approve or deny the transfer of a prisoner from MSP via the I.C.C.

17. A June, 2021 classification report on Mr. Evans revealed that MDOC and MSP officials "identified" him as a "management problem" due to his filing of grievances and lawsuits against them.

18. This report further revealed that as a result of this "identification" Mr. Evans was recommended for an out-of-state transfer to Massachusetts via the I.C.C. which was ultimately approved and carried out by Mr. Gootkin and Mr. Salmonsen on February 19, 2019.

19. Based upon the revelations of the June, 2021 classification report, Mr. Gootkin and Mr. Salmonsen transferred Mr. Evans out-of-state to Massachusetts via the I.C.C. to punish and retaliate against him for his filing of grievances and lawsuits against MDOC and MSP offi-



cials, as well as to prevent him from filing any further grievances and lawsuits.

20. Eversince Mr. Goothin and Mr. Salmonsen transferred Mr. Evans out-of-state on February 19, 2019, the prisoner grievance procedures at MSP have been unavailable to him, and he has been completely unable to file any grievances with MDOC and/or MSP.

21. The Massachusetts prisoner grievance procedures only apply to complaints involving the Massachusetts Dept of Corrections, its facilities, and personnel. Thus, these grievance procedures are unavailable to Mr. Evans for complaints against Montana prison officials like Mr. Goothin and Mr. Salmonsen.

VI. Legal Claims:

(1). On February 19, 2019; Mr. Goothin and Mr. Salmonsen took retaliatory action against Mr. Evans for his filing of grievances and lawsuits against MDOC and MSP officials, by transferring him out-of-state to Massachusetts, via the Interstate Corrections Compact (I.C.C.). In

direct violation of Mr. Evans' First Amendment rights under the Constitution of the United States.

22. Mr. Evans realleges and incorporates by reference, paragraphs 13-21.

23. The First Amendment to the Constitution of the United States forbids prison officials from retaliating against prisoners for excercising their right to file grievances and lawsuits. See, e.g. Crawford-El v. Britton, 523 U.S. 574, 588 n.10, 118 S.Ct. 1584 (1998); Hoskins v. Lenear, 395 F.3d 372, 375 (7th Cir. 2005) (per curiam); and Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003)

24. A retaliation claim essentially entails the following elements: (1). the plaintiff engaged in "protected conduct", (2). an "adverse action" was taken against the plaintiff that would deter a "person of ordinary firmness" from continuing the protected conduct, and (3). there is a "casual connection" between the protected conduct and adverse action.

25. Although different courts have stated this standard in different ways, they

generally amount to the same thing. See, e.g., Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004); Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam); Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); and Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

26. Here, Mr. Evans' claim against Mr. Goothin and Mr. Salmonsen, that they took retaliatory action against him for his filing of grievances and lawsuits against MDOC and MSP officials by transferring him out-of-state on February 19, 2019; states a sufficient retaliation claim under the previously described criteria, and applicable case law.

27. First, Mr. Evans' "protected conduct" was that of his filing grievances and lawsuits against MDOC and MSP officials.

28. It is well established in the Ninth Circuit, as well as other circuits, that the filing of grievances and lawsuits against prison officials by prisoners constitutes "protected conduct" for First Amendment purposes. See, e.g., Dannenberg v. Valadez,

338 F.3d 1070, 1072 (9th Cir. 2003); Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003); and Walker v. Bain, 257 F.3d 660, 663-64 (6th Cir. 2001).

29. Second, Mr. Gootkin and Mr. Salmonsen took adverse action against Mr. Evans for his filing of grievances and lawsuits against MDOC and MSP officials, by transferring him out-of-state to Massachusetts via the I.C.C. on February 19, 2019.

30. Mr. Evans argues that this adverse action would deter a "person of ordinary firmness" from continuing to engage in the protected conduct because ever since Mr. Gootkin and Mr. Salmonsen transferred him out-of-state, the prisoner grievance procedures at MSP have been unavailable to him, and he has been completely unable to file any grievances with MDOC and/or MSP. Thus, they effectively stopped Mr. Evans from continuing his protected conduct.

31. The Courts have found that transfers are sufficient adverse actions to support a retaliation claim. See, e.g., Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985); Morris v. Powell,

449 F.3d 682, 687 (5th Cir. 2006); and Siggers-El v. Barlow, 412 F.3d 693, 701-02 (6th Cir. 2005)

32. Third, there is a causal connection between Mr. Evans' filing of grievances and lawsuits against MDOC and MSP officials, and Mr. Goothin and Mr. Salmonsen transferring him out-of-state, because the June, 2021 classification revealed that MDOC and MSP officials "identified" Mr. Evans as a "management problem" due to his filing of grievances and lawsuits against them.

33. The report further revealed that as a result of this "identification" Mr. Evans was recommended for an out-of-state transfer to Massachusetts via the I.C.C., which was ultimately approved and carried out by Mr. Goothin and Mr. Salmonsen on February 19, 2019.

34. The June, 2021 classification report on Mr. Evans is significant because it directly links Mr. Evans' "protected conduct" of filing grievances and lawsuits against MDOC and MSP officials, to Mr. Goothin's and Mr. Salmonsen's

"adverse action" of transferring him out-of-state on February 19, 2019, and is direct evidence of their retaliatory and malicious intent in doing so.

35. The June, 2021 classification report does not state any other reason for "identifying" Mr. Evans as a "management problem" and transferring him out-of-state other than his filing of grievances and lawsuits against MDOC and MSP officials.

36. Thus, Mr. Evans' "protected conduct" was the motivating factor behind Mr. Goothin and Mr. Salmonsen taking "adverse action" against him by transferring him out-of-state to Massachusetts, via the I.C.C., on February 19, 2019.

37. Because the motivating factor behind Mr. Goothin and Mr. Salmonsen transferring Mr. Evans out-of-state was his filing of grievances and lawsuits against MDOC and MSP officials, it cannot be said that such transfer was in furtherance of a legitimate penological interest. Rather, such transfer was punitive and retaliatory.

38. Furthermore, based upon the revelations of the June, 2021 classification

report, had it not been for Mr. Evans filing grievances and lawsuits against MDOC and MSP officials, then Mr. Gootkin and Mr. Salmonsen would not have transferred him.

VII. Prayer For Relief:

Wherefore, Mr. Evans respectfully prays that this Court enter Judgement:

39. Granting Mr. Evans a declaration that the acts and omissions described herein, violate his rights under the Constitution and laws of the United States;

40. Granting Mr. Evans a preliminary and permanent injunction ordering the defendants to cease their retaliation against him, and immediately return him to Montana.

41. Granting Mr. Evans compensatory damages in the amount of $5,000 against each defendant, jointly and severally;

42. Granting Mr. Evans punitive damages in the amount of $10,000 against each

defendant, jointly and severally;

43. Granting, Mr. Evans recovery of his costs in this suit, and

44. Granting, Mr. Evans any other relief this Court deems just, proper, and equitable.

Dated this 6th day of December, 2021

Respectfully Submitted,

Anthony L. Evans
Plaintiff / "Pro Se" Litigant